IN THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

WILLIE JAMES PYE,
Appellant,

v.

TYRONE OLIVER, Commissioner, Georgia Department of Corrections,
CHRISTOPHER CARR, in his official capacity as the Attorney General of
the State of Georgia,
STATE BOARD OF PARDONS AND PAROLES,
SHAWN EMMONS, Warden, Georgia Diagnostic & Classification Prison
Appellees.
_____

On Appeal from the United States District Court
Northern District of Georgia, No. 3:24-CV-00048-TCB
_____

**REPLY BRIEF OF APPELLANT WILLIE JAMES PYE**
_____

Nathan A. Potek
FEDERAL DEFENDER PROGRAM, INC.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
(404) 688-7530/Nathan_Potek@fd.org
Counsel for Willie James Pye

CERTIFICATE OF INTERESTED PARTIES

Under 11th Circuit Rule 26.1-2(b), counsel certifies that the certificates filed by the parties in the initial briefs listed a complete accounting of the persons and companies with an interest in this appeal.

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................ii

ARGUMENT AND CITATION OF AUTHORITY ...........................................1

   I.  MR. PYE'S EQUAL PROTECTION CLAIM STATED A VALID
      CLAIM FOR RELIEF, AND IT IS LIKELY TO SUCCEED ON
      THE MERITS. ..............................................................................2

      A. The district court clearly erred in construing Mr. Pye's claim
         as a "class-of-one" claim. ...............................................................2

      B. Mr. Pye is similarly situated to the favored class in all
         relevant respects. ...........................................................................4

      C. For all the same reasons, Defendants have not offered a
         single rational basis to support this class-based distinction. ............7

      D. Mr. Pye's Equal Protection claim is entitled to heightened
         scrutiny. .......................................................................................8

   II.  MR. PYE'S DUE PROCESS CLAIM STATED A VALID CLAIM
      FOR RELIEF AND IT IS LIKELY TO SUCCEED ON THE
      MERITS. ....................................................................................10

CONCLUSION ....................................................................................12

CERTIFICATE OF COMPLIANCE AND SERVICE ......................................14

## ARGUMENT AND CITATION OF AUTHORITY

The "Reply Brief of Appellees/Defendants" (hereinafter "Response")[1] largely repeats the district court's errors in asserting that Mr. Pye's equal protection and due process claims failed even to surpass Rule 12(b)(6). Mr. Pye has already addressed these errors in his initial brief and responds briefly only to emphasize a few points.[2]

---

[1] To clarify, Mr. Pye will cite to "Response" and then the ECF-stamped page number at the top of the document.

[2] Although this Court directed Defendants to respond to Mr. Pye's brief and emergency motion for an order staying execution pending appeal, the Response does not engage at all with Mr. Pye's emergency motion or with his discussion of the final three factors entitling him to a stay of execution. Accordingly, Mr. Pye will rest on the *uncontested* arguments made in his emergency motion as to irreparable injury, harm to the other litigant, and public interest.

I.  **MR. PYE'S EQUAL PROTECTION CLAIM STATED A VALID CLAIM FOR RELIEF, AND IT IS LIKELY TO SUCCEED ON THE MERITS.[3]**

A.  **The district court clearly erred in construing Mr. Pye's claim as a "class-of-one" claim.**

Defendants note that "[Mr.] Pye argued at the hearing before the district court that he had not pled a 'class of one' equal protection argument but instead a standard equal protection argument." Response at

_____

[3] Defendants complain that Mr. Pye did not cite any law supporting his point that the district court erred in dismissing his Complaint for the same reasons as it denied his TRO because the Rule 12(b)(6) standard is dramatically different than the showing that must be made for a TRO. *See* Response at 15 ("Pye does not cite to any law holding these standards are 'dramatically different.'"). The standards for those motions are so plainly distinct that this proposition should not need a citation. *Compare* Fed. R. Civ. P. 8(a)(2) (a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief") *with Gissendaner v. Comm'r, Georgia Dep't of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015) (TRO movant must establish "a substantial likelihood of success on the merits"). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement[.]'").

Moreover, even the one case cited by Defendants *proves Mr. Pye's argument*. There, this Court found that because the plaintiff could not survive a motion to dismiss (the easier standard to satisfy), she surely could not show a likelihood of the success on the merits (the harder standard). *FuQua v. Massey*, 615 F. App'x 611, 613 (11th Cir. 2015) (unpublished).

19. But what Defendants do not note is that the district court *agreed* with counsel for Mr. Pye at that hearing:

> Mr. Potek: And so to the extent that there was any confusion based on the pleadings, as I mentioned in my email to the Court, we have prepared an amended complaint and are happy to file that, if that would be helpful. But I think, ultimately, the thrust of the claim and the clear intent of the claim is a traditional equal protection claim where they're alleging the class-based discrimination.
>
> The Court: **All right. I accept that that's what it is.**
>
> Mr. Potek: Okay. I appreciate that, Your Honor. So given that, I'd like to jump into the –
>
> The Court: Okay.
>
> Mr. Potek: -- the traditional equal protection argument.

Doc. 18 at 5 (emphasis added).

And for good reason. The entire basis of Mr. Pye's Complaint is that Defendants' interpretation of the Agreement creates two distinct classes of death row prisoners. *See, e.g.*, Doc. 1 at 6. His challenge to the Defendants' creation of a disfavored class of death row prisoners, who Defendants contend receive none of the procedural protections afforded to other death row prisoners by the Agreement, is plainly a standard equal protection

claim—not a class of one claim. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008) ("Our equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'") (quoting *McGowan v. Maryland,* 366 U.S. 420, 425 (1961)).

B.   **Mr. Pye is similarly situated to the favored class in all relevant respects.**

Defendants concede that Mr. Pye and the disfavored class of death row prisoners "**may** be similar" to the favored class because they are all subject to a death sentence and should enjoy the benefits of the Agreement equally. Response at 25 (emphasis added). But those *are* the "relevant respects." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). The timing of this Court's rulings in their cases (i.e., the State's basis for determining their inclusion in the Agreement's protections) is not a relevant distinction in terms of the protections at issue. As Mr. Pye made clear in his initial brief to this Court, the conditions set out in the Agreement were meant to ensure that all death row prisoners had adequate access to unimpaired representation before the State resumed executions following the pandemic. *See* Brief of Appellant at 40-43. In other words, the conditions

4

were structured to make sure that the pandemic's detrimental effects on counsel's representation of death-row prisoners had dissipated before executions resumed. When facing the critical final stages before their execution, *all* death row prisoners have an identical interest in receiving representation that is unimpaired by post-pandemic restrictions. And all prisoners would be identically harmed by the deprivation of such efficacious representation. Moreover, the problems stemming from ongoing post-pandemic restrictions—including restrictions on legal visitation at GDCP, which still has not returned to its pre-pandemic norm—impact the disfavored class in precisely the same manner as they do the favored class.

Defendants nevertheless contend that such similarity is "not enough," concluding that "Pye is not similarly situated because he was not a party to the Agreement." *Id.* at 25-26.[4] This argument does not just "seem

---

[4] Defendants also contend that this Court is "bound" by the Supreme Court of Georgia's decision in *State v. Fed. Def. Program, Inc.*, 315 Ga. 319 (2022) as to who is a party to the Agreement. Response at 27. First of all, Mr. Pye is not asking this Court to find that he is a "party to the Agreement." Second, the language in *Federal Defender* on which the State relies was not a holding about the limits of the Agreement itself, but instead about the scope of the

circular," *id.* at 26, *it is circular.*  The fact of the challenged classification

itself is not a sufficient basis to determine that the disfavored class is not

similarly situated to the favored class.[5]

---

trial court's preliminary injunction issued in a state breach of contract
claim. Mr. Pye was not a party to that case. No constitutional claims, and
certainly no claims arising under the U.S. Constitution, were raised there.
And in fact, the *reason* Mr. Pye has filed a federal Equal Protection and Due
Process challenge is because he has been treated disparately from those
included in the Agreement. His request for relief here is not in conflict with
the Georgia Supreme Court's decision; rather, it assumes as true
Defendants' position that Mr. Pye is not protected by the Agreement.
Accordingly, any state court determination as to who is or is not covered
by the Agreement is not preclusive of, or even relevant to, this Court's
assessment of whether such a classification is constitutional.

[5] Defendants also argue that, under Mr. Pye's logic, "any time a group of
inmates received more time, or some other similar benefit, from the State to
litigate whatever cause they chose, then all of the other inmates would get
[that benefit]." Response at 29. Not so. And this illustrates why Mr. Pye's
claim is not a class-of-one claim. If, in Defendants' hypothetical, the State
agreed to an extension of time to file a legal brief in one prisoner's case but
refused in another, the Equal Protection Clause would have nothing to say
about it, unless the second prisoner could meet the standards for a class-of-
one claim. But if the State were to make a policy of agreeing to extensions
of time for a *class* of prisoners, then the Equal Protection Clause would
require that the State apply that policy equally to all similarly situated
death-row prisoners unless it had a compelling reason not to do so. This is
the basic principle of law on which Mr. Pye's claim is grounded, and it
does not create any unusual or extreme outcomes, as the State attempts to
claim.

C.  **For all the same reasons, Defendants have not offered a single rational basis to support this class-based distinction.**

Defendants repeat the district court's error in asserting that the rational basis for treating the disfavored class differently is because they are not covered by the Agreement. *See* Response at 30. Again, the distinction between the protected and unprotected classes of death row prisoners is not rational simply because the State has made a distinction between the protected and unprotected classes of death row prisoners.

Moreover, asking, as Defendants do, whether there was a "'rational reason' for the Agreement" itself misses the point. The State's reason for entering into the Agreement is not what is being challenged here. Instead, Mr. Pye is challenging the State's decision to deny him the same procedural protections it has extended to other death-row prisoners. The Agreement, as Mr. Pye has previously explained, was designed *both* to solve for the "backlog" of warrant-eligible prisoners created by the pandemic *and* to ensure that the significant restrictions occasioned by the pandemic were lifted (and the capital defense bar was therefore able to adequately represent their clients in clemency and pre-execution proceedings) before executions resumed. Setting aside whether there may have been some basis

to provide specific and limited spacing provisions between execution

warrants for some prisoners affected by the backlog, there is no rational

reason for the State's decision to execute members of the disfavored class

before the Agreement's conditions are met and therefore without the

benefit of the critical protections of adequate representation afforded by the

Agreement.[6]

D.    **Mr. Pye's Equal Protection claim is entitled to heightened scrutiny.**

The district court "acknowledge[d] that the right to continue living is

fundamental[.]" Order at 11. Defendants cannot seriously dispute this.

---

[6] Defendants assert that "members of the capital defense bar suggested the rehearing [cut-off] language and agreed to which inmates were covered by the Agreement." Response at 32. While this is irrelevant for Equal Protection purposes, this argument is both incorrect and misleading. The capital defense bar proposed the rehearing cut-off only as to a spacing provision that was solely designed to address the "backlog" issue. *See* Doc. 8-10 at 6. Crucially, the defense bar's proposals *never* limited the substantive conditions in the Agreement, which were designed to ensure adequate access and representation, to any particular class of prisoners. *See id.* It was Defendants who took that language and applied it to the entirety of the Agreement. Moreover, the defense bar does not share Defendants' interpretation of the Agreement and did not anticipate that Defendants could or would resume executions for some prisoners before the conditions were met.

Instead, Defendants suggests that this interest in life is due "minimal" due process and, alternatively, that there is no fundamental right "for more time to prepare for an execution..." Response at 34. First, the extent of the due process rights which flow from that fundamental right to clemency proceedings is an entirely separate question. Second, Mr. Pye has alleged that Defendants' disparate treatment impinged his fundamental right to continue living—by, *inter alia*, increasing the likelihood that he will be executed *sooner* than he otherwise would have been if he had the same procedural protections enjoyed by other prisoners—not a fundamental right to prepare for clemency.

Defendants also contend that "nothing about [*M.L.B. v. S.L.J.*, 519 U.S. 102 (1996)] equates to Pye's assertion here." Response at 34. Not so. While of course the facts here are different—this case is not about termination of parental rights or the opportunity to directly appeal—the principle is the same. In *M.L.B.*, the Court applied heightened scrutiny where the disparate treatment implicated "rights this Court has ranked as of basic importance in our society[.]" *Id.* at 116. Here, then, where the right being infringed implicates even higher stakes, heightened scrutiny is warranted.

II.    **MR. PYE'S DUE PROCESS CLAIM STATED A VALID CLAIM FOR RELIEF AND IT IS LIKELY TO SUCCEED ON THE MERITS.**

Defendants make two arguments as to why Mr. Pye has failed to state a claim for relief under the Due Process Clause. First, Defendants assert that "[t]he Supreme Court and this Court have held that there is no liberty interest in clemency and a very minimal [sic], if any, due process implications in clemency proceedings." Response at 36; *see also id.* ("[*Woodard*] holds there is no constitutionally protected liberty interest in clemency proceedings."). Second, Defendants assert that "[Mr.] Pye has and will receive more [process] than that afforded in *Woodard*." *Id.* at 40.

First, the Supreme Court has clearly held that the Due Process Clause *does* apply to clemency proceedings. *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 288 (1998) (O'Connor, J., concurring). And this Court has been unequivocal:

> The Supreme Court's decision in *Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998), did recognize a due process interest in the context of state clemency proceedings for death row inmates. The holding in that case was provided by Justice O'Connor's concurring opinion. *Wellons v. Comm'r, Ga. Dep't of Corr.,* 754 F.3d 1268, 1269 n. 2 (11th Cir.2014) (recognizing Justice O'Connor's concurring opinion as "set[ting] binding

10

precedent"). Her opinion acknowledges that the "life" interest protected by the Due Process Clause itself guarantees "some *minimal* procedural safeguards" for state clemency proceedings involving death row inmates. *Woodard,* 523 U.S. at 289, 118 S.Ct. at 1254 (O'Connor, J., concurring).

*Gissendaner v. Comm'r, Georgia Dep't of Corr.*, 794 F.3d 1327, 1330–31 (11th Cir. 2015).

Moreover, notwithstanding this Court's unambiguous instruction that Justice O'Connor's concurring opinion provided the "holding" in *Woodard*, Defendants repeatedly rely on the non-binding plurality opinion in *Woodard* in an effort to defeat Mr. Pye's arguments. *See* Response at 36, 37, 38.[7] Indeed, that Defendants only response to Mr. Pye's analogy to the *Lucey* and *Griffin* line of cases—establishing that once the State extends critical procedural protections to certain prisoners it must do so in accordance with the Due Process Clause—is to misleadingly rely on *Woodard*'s plurality opinion proves the strength of Mr. Pye's argument. *See*

---

[7] Defendants' repeated misleading references to the non-binding portion of *Woodard* is particularly alarming as Mr. Pye has *twice* now put Defendants on notice that this Court has already concluded that Justice O'Connor's opinion provides the holding. *See* Doc. 1 at 20; Doc. 10 at 11.

Response at 38 ("*Woodard* addressed this claim and specifically

distinguished appellate review from clemency proceedings.").

Defendants' assertion that, regardless, Mr. Pye has received more

process than the petitioner in *Woodard* is likewise unavailing.[8] Mr. Pye is

*not* challenging Georgia's pre-pandemic clemency procedures in the

abstract. Rather, once the State has extended critical process and benefits—

benefits that are meant to ensure adequate representation and preparation

for clemency proceedings and pre-execution litigation—they were not free

to do so in a manner that was inconsistent with the Due Process clause. Mr.

Pye is entitled to the same crucial process and protections that other death-

row prisoners are receiving. The State's arbitrary deprivation of those

protections and inadequate process violates the Constitution here.

## CONCLUSION

For all the reasons identified in his initial brief, his emergency

motion, and above, Mr. Pye respectfully asks this Court to grant his motion

---

[8] This assertion, moreover, was rejected by the Supreme Court of Georgia, noting that such an argument "fails to take into account the effect of the COVID-19 restrictions on counsel's investigations and preparations." *Fed. Def. Program, Inc.*, 315 Ga. at 347.

to stay his execution pending the disposition of his appeal and, then, to vacate the district court's March 15 Order granting Defendants' motion to dismiss.

/s/ Nathan Potek
Nathan Potek (Ga. 747921)
Federal Defender Program Inc.
101 Marietta Street, NW, Suite 1500
Atlanta, GA 30303
(404) 688-7530
Nathan_Potek@fd.org
COUNSEL FOR WILLIE PYE

## CERTIFICATE OF COMPLIANCE AND SERVICE

This is to certify that the foregoing brief is in compliance with Federal Rule of Appellate Procedure 32(a)(5), (6) because it has been prepared in Book Antiqua 14 point, a proportionally-spaced typeface, using the Microsoft Word 365 processing software.  This brief does comply with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 2,681 words.  Finally, on the date set forth below, counsel uploaded this brief to the Court's web site, which promptly served opposing counsel:

> Sabrina Graham
> sgraham@law.ga.gov
> Attorney General's Office
> 40 Capitol Square, S.W.
> Atlanta, GA 30334

Dated this 19th day of March 2024.

> */s/ Nathan Potek*
> Nathan Potek (Ga. 747921)
> Counsel for Mr. Pye